## NORCROSS et al. v. UNITED STATES.
### Civ. No. 945–49.

United States District Court
D. New Jersey.
Aug. 20, 1953.

Norcross & Farr, by Thomas M. Farr, Camden, N. J., for plaintiffs.

William F. Tompkins, U. S. Atty., Newark, N. J., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Richard M. Roberts, Special Assts. to the Atty. Gen., for defendant.

MADDEN, District Judge.

This is an income tax case instituted by plaintiffs, two of whom are members of the bar, associated under the firm name of Norcross and Farr, the other plaintiff being Mr. Farr's wife, to recover income taxes for the years 1942–1943 alleged to have been erroneously paid to and collected by the Government.

Claims for refund were filed, but no determination has been made by the Collector of Internal Revenue or any other authorized official, consequently this suit. Trial has been held and briefs filed.

The question involved and the claims filed, assert plaintiffs' rights under Section 107(a)[1] of the Internal Revenue Code to apportion with other years and not charge completely to the years involved, 1942 and 1943, certain specified items of income received by the partnership from its practice of law. For convenience Section 107(a) is set forth in the footnote.[2]

---

1. 26 U.S.C.A. § 107.

2. Section 107 [as added by Section 220(a), Revenue Act of 1939, c. 247, 53 Stat. 862, and amended by Section 139(a), Revenue Act of 1942, c. 619, 56 Stat. 798, and Section 119(b), Revenue Act of 1943, c. 63, 58 Stat. 21]. "Compensation for services rendered for a period of thirty-six months or more and back pay.

"(a) *Personal services.* If at least 80 per centum of the total compensation for personal services covering a period of

The items of income involved can be separated into two general classifications and dealt with accordingly. The first group of items are fees received by the partner, Frank S. Norcross, Esquire, as a result of his legal representation of certain Trusts and Estates, and it is agreed that the amount received represented work over a period of years (more than the 36 months minimum required by Section 107(a), supra), and that consequently they come within that portion thereof.

The government answers this statement with the fact that in each instance Mr. Norcross received a subsequent fee from the same estate of such amount as to make the fee received during the years in question (1942–1943) less than the requirement of the statute, that at least 80% of the total compensation be received in the one taxable year, and therefore the claim must fail.

Plaintiffs', while admitting the receipt of the subsequent fees, counter the government's contention with the argument that the fees received for the years in question were for services then complete and paid for under allowance from the court dealing with the trust or estate, and that any services rendered subsequent to and paid for after such allowance would be a new hiring and a new series of services rendered, and consequently should not be calculated as a part of the total fee.

Plaintiffs cite, in support of their position, the case of In re Dorrance's Estate, App.Div.1949, 5 N.J.Super. 236, at page 238, 68 A.2d 633, at page 634, wherein Judge Donges said:

"There is nothing to support the contention that the allowance was 'on account' as urged by appellants. Judge Lippincott may have felt that the allowance was inadequate, as is evidenced by the provision in his will, directing his executors to make appli-

cation for additional allowance for his services prior to the filing of the intermediate account. However, this cannot affect the conclusiveness of the order allowing the proctor's fee, in the absence of anything to indicate that it was anything but a full and complete allowance, and not an allowance on account."

This Court finds two reasons why this case is not very helpful or conclusive. First, the present plaintiffs bring their action against the United States under a Congressional Statute. In the absence of a delegation of authority, the sovereign United States could not be bound by the probate law of the State. Secondly, the case there under consideration was an action by the executor of the deceased proctor who felt he had additional compensation owed him for his services which was disputed by the Estate.

Looking to Federal law, we find the comparatively recent case of Loew, Petitioner v. Commissioner, 17 T.C. 1347 (Tax Court Feb. 15, 1952), where the facts and theory advanced by the taxpayer are strikingly similar to the case here, as outlined by Judge Tietjens of the Tax Court of the United States:

"Petitioner's theory in claiming the benefits of section 107 is that his services for the estate during the period October 7, 1940, to April 4, 1944, are to be treated separately from the services for the period beginning with his appointment as attorney and extending through October 7, (1940) when he filed his first petition for the allowance of fees. The $5,000 he received for the services rendered during the first period, argues petitioner, is not to be added to the $3,500 for the second period services. Thus he would avoid the 80 per cent provision of the statute". (parenthesis supplied)

thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be

greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual." 26 U.S.C.A. § 107.

And further Judge Tietjens concluded:

"Here, petitioner was employed as attorney by the executors in 1939 and continued in that capacity at least through April 4, 1944. He handled whatever legal matters arose during that period involving the estate. On October 7, 1940, he petitioned the Surrogate for an allowance of fees for the aggregate of his services rendered to that date. His employment as attorney for the executors continued, however, and on April 7, 1944, he again petitioned the 'Surrogate for an allowance of fees, this time for the aggregate of services performed between October 7, 1940, and April 4, 1944. We are of the opinion that in deciding whether section 107 is applicable we must treat his services as extending over the entire period of his employment as attorney for the executors. For this purpose we do not think the period of service is to be broken up by the simple expedient of filing a petition for fees. Accordingly, the amount of $3,500 received in 1944 did not amount to 80 per cent of the total compensation which he received as such attorney and petitioner is not entitled to the benefits of section 107."

This decision of the Tax Court was affirmed by the Court of Appeals, 2 Cir., January 29, 1953, *per curiam*, 201 F.2d 368. See also, Lum v. Commissioner of Internal Revenue, 12 T.C. 375.

And in Spears v. Commissioner, 3 Cir., 1947, 164 F.2d 486 this 'Circuit held in a *per curiam* opinion that the total compensation received by the taxpayer for engineering services performed by him in connection with a series of construction projects for a single employer under a single employment contract must be taken into account to determine whether the taxpayer was entitled to the benefits of Section 107. And if the amount received in the year in question did not constitute the statutory ratio (here 80%) of the entire sum received, that the taxpayer was not entitled to the benefits of the section.

And further speaking of fees to trustees in estate matters under Section 107, Judge Learned Hand said in Civiletti v. Commissioner, 2 Cir., 1945, 152 F.2d 332, at page 333:

"It seems to us clear that, for example, installment payments while a job was in progress were not covered merely because they were payable only for work already done."

And again upon the same question, Judge Hand said further in Smart v. Commissioner, 2 Cir., 1945, 152 F.2d 333, at page 335:

"Furthermore, although it is true that a trustee does not earn his commissions de die in diem, but only after he has succeeded in satisfying the court upon an accounting as to his stewardship, yet it is natural to think of what he then receives as having been earned progressively."

See also, Englar's Estate v. Commissioner, 2 Cir., 1948, 166 F.2d 540; and also an opinion by Judge Hartshorne of this District in Kingsford v. Manning, D.C.1952, 109 F.Supp. 949.

For the reasons and upon the authorities hereinbefore stated those sums received as fees from the estates during the years in question, not meeting the 80% test as to the entire fee received are not covered by Section 107, supra, and the complaint as to that portion of the claim will be dismissed.

The facts concerning the item making up the other general classification in the claim is as follows:

In January, 1936, a Petition for Reorganization under Section 77B[3] was filed in this Court in the matter of The Guanajuato Reduction and Mines Company, Debtor, and such reorganization ensued in litigation for several years. During the course of this litigation, plaintiff law firm was engaged to represent the American Finance and Securities Company, a Delaware Corporation, in connection with the reorganization of the Debtor company. In that matter, the plaintiff law firm was,

3. 11 U.S.C.A. § 207 et sequel.

on November 3, 1937, made an allowance of $3500 in fees by this Court, and by order of December 17, 1937 the trustees therein were directed to pay such allowance.

Subsequently, and around January 1st, 1938, the plaintiff law firm was engaged to bring about the dissolution of the American Finance and Securities Company, which services were concluded by July, 1942 and for which the plaintiffs were paid a fee of $2500, which sum is the item originally in dispute here. A copy of plaintiffs' bill to their client for such services is set forth in the footnote.[4]

The government in its brief says (page 10):

"As to the fee received from American Finance & Securities Company, the Government must concede that the taxpayer has presented sufficient evidence, if believed, to allow the fee to be covered by Section 107(a)."

Thus, this phase of the case rests entirely upon the creditability of plaintiff, Frank S. Norcross, that he began his services in the dissolution matter about January 1st, 1938, subsequent to the receipt of the fee in the reorganization matter. Of this there should be no question for the Court finds that they were two separated, unrelated matters and separate hirings by the client of the lawyer. But further, if plaintiff Norcross, was completely unknown to the writer, what is there in the record to rebut or even throw a shadow of doubt upon his sworn testimony? Contrary to this, however, plaintiff is a highly respected member of the bar, a practitioner held in high regard in this Court and the Bar of this State. What more need to be said as to his creditability?

For the foregoing reasons, plaintiffs will have judgment covering the appropriate refunds upon the receipt of the $2500 fee here in question. I will rely upon counsel to compute the figures.

Prepare an order.

4.                    "July 10, 1942.
"American Finance and Securities Company
107 North 7th Street
Camden, N. J.
      To—Norcross and Farr—Drs.
"To—Services in representation of the company from January 1, 1938 to and including the conclusion of dissolution proceedings, which services included, among other things, attending to the execution and filing of all corporate tax returns and reports, passing on transfers of the Corporation's securities, including a number of transfers from decedents' estates and the issuance of general advice and consultation with respect to the affairs of the company and the liquidation of its assets; representation of the company's interest in the affairs of Empire Lumber Company during its reorganization and thereafter in the Cowichan Lake Company; in formulating a plan of final liquidation and distribution of the company's assets and in carrying out such plan; in effecting the dissolution of the corporation, including the preparation of all documents required in connection with the foregoing matter, which charge for services was approved by the Board of Directors on June 2, 1942 and by a meeting of the stockholders on July 7, 1942
                              $2,500.00'"